UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| LONNELL BROWN, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | 2:07-cr-00095-GZS |
| | ) | 2:10-cv-00425-GZS |
| UNITED STATES OF AMERICA, | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Lonnell Brown, a federal inmate, has filed a 28 U.S.C. § 2255 motion. After his prosecution in the District of Maine, Brown is serving this district's 188-month sentence on a single count of conspiring to distribute and possess, with the intent to distribute, crack cocaine. Brown pled guilty to this charge. He took a direct appeal and the First Circuit Court of Appeals affirmed this Court's judgment. In close proximity to the adjudication of his District of Maine criminal case, Brown was also prosecuted on federal firearm charges in the District of Connecticut. On May 19, 2008, the federal court in Connecticut, aware of the overlapping Maine proceedings, sentenced Brown to 41 months in prison to be followed by three years of supervised release. That judgment includes the recommendation, "that any sentence imposed in the defendant's case in Maine, run concurrent with the sentence imposed in this case." Brown was sentenced on his guilty-plea conviction in the District of Maine on June 18, 2008, (just shy of a month later) by Judge Singal who was fully cognizant of the final outcome of the Connecticut prosecution. I recommend that the Court deny Brown 28 U.S.C. § 2255 relief based on the following discussion.

## Discussion

**A.      The District of Maine Sentencing Proceeding**

With regards to Brown's June 18, 2008, sentencing proceeding in Maine (see Sentencing Tr., Doc. No. 355), the Court explained to Brown that it was granting defense counsel's request to lower Brown's criminal history category from a III to a II. (Id. at 3.) At the culmination of the proceeding the Court summarized:

> The base offense level here is 34. The offense involved possession of a weapon, dangerous weapon, it's increased by two levels to 36. The defendant had a managerial role, increasing it to 38. Defendant has accepted responsibility, reducing it to 35. Defendant has a Criminal History Category II, resulting in a guideline range of 188 to 235 months. Supervised release is five years.

(Id. at 35.) After an unusually extensive interchange directly with Brown on the sentencing questions and referring to the fact that shortly before his involvement in the federal criminal conduct Brown had been released from a long state-term of imprisonment on firearm charges, the Court reflected:

> In this case, we have an individual who was sentenced to a lengthy prison term, served ten years of that lengthy prison term. That prison term involved the use of firearms. In this case, within a short period of time after release from that prison term, the defendant felt that he needed the money and went into the drug business. That drug business, in at least one episode, involved possession of a firearm in connection with that venture. This defendant was not an addict, dealing drugs for his own addiction. He was in the crack cocaine business. It puzzles me, and continues to puzzle me, why an individual devoted to his children, who fully knows the importance of having a father in a child's life, would deliberately go into a venture knowing that when he is arrested, which will come sooner or later, he is going to leave his children alone.
>     Mr. Brown knows that children without fathers are especially likely to end up in the same situation he is in today, and the real victim here may not be the drug buyers or the drug sellers, but the real victims in this case are his children, and perhaps there is no punishment severe enough for where you've left them, unfortunately.

(Id. at 36-37.)

The First Circuit Court of Appeals affirmed the sentence in the following judgment:

2

> Appellant challenges as unreasonable his 188 month sentence of imprisonment, imposed upon his conviction of conspiracy to distribute cocaine and cocaine base. The transcript of the sentencing hearing indicates that there was no disagreement regarding the calculation of the sentencing guidelines; that the court considered them but treated them as advisory; and that it fully explained its sentence -- at the bottom of the applicable guideline range -- in relation to the factors listed in 18 U.S.C. § 3553. The court noted, in particular, that after serving a 10 year sentence for assault, appellant chose to traffic in drugs in order to earn money. The claim that the sentence was not in compliance with United States v. Booker, 543 U.S. 220 (2005), must be rejected. The explanation was thorough and straightforward and the result was defensible. United States v. Politano, 522 F.3d 69, 73 (1st Cir. 2008)(how reviewing court gauges reasonableness).

(Aug. 28, 2009, J. at 1, Doc. No. 482.)

**B.    Ineffective Assistance of Counsel Claims**

With regards to Brown's Sixth Amendment ineffective assistance claims, Strickland v. Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474 U.S. 52 (1985) govern the resolution of Brown's Sixth Amendment claim. "In order to prevail," Brown "must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words," Brown "must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting there from." Id. In this case the focus is on the sentencing implications of counsel's performance as those outcomes intersected with the decision and the terms and expectations pursuant to which he pled guilty to the Maine offense.

*1.    Brown asserts that trial counsel was ineffective in ignoring Brown's request to have the Connecticut case and the Maine case combined in order to reduce Brown's sentencing exposure*

Brown's first 28 U.S.C. § 2255 ground maintains that he instructed his attorney representing him in his District of Maine prosecution to consult with his attorney in the District

3

of Connecticut towards having both cases tried in the same district. He indicates that the Connecticut District Court Judge had articulated a concern that proceeding with separate cases could result in a longer sentence for Brown. Brown faults his attorney for failing to consider and investigate Brown's strategy for combining the cases.

To its credit, given the skeletal articulation of this claim in Brown's Section 2255 motion, the United States addresses this claim at some length. All the reflections about how Brown might imagine this claim to have merit need not be repeated here. In his 28 U.S.C. § 2255 motion Brown relied principally on his assertion that the District Court Judge in the Connecticut case expressed concern that keeping the two prosecutions separate would result in a longer sentence than necessary. (See Sec. 2255 Mot. at 4.) In his reply brief Brown further argues that he instructed his attorney in the Maine case to "consult" with the judge presiding over the Connecticut case "with the intent to have both cases tried as one in the same district." (Reply Mem. at 2, Doc. No. 543.) "However," Brown complains, "petitioner's counsel failed to file a motion to have both case combined." Then Brown asserts in a conclusory fashion: "Had he done so, petitioner's sentence would have been different." (Id.) It seems that Brown believes that the firearm enhancement applied in his Maine case because of his Connecticut conviction for possession of a firearm would not have been such a factor in setting his ultimate sentence if he, instead, had been tried in one court on both counts rather than allowing his separate Connecticut conviction to have a lingering impact on his Maine sentence. In his reply memorandum Brown somewhat transmutes his argument into a Booker claim arguing that this Court impermissibly enhanced his Maine sentence given the fact he was never charged in the Maine proceeding with a weapons crime. (Id. at 3-4.)

Brown's Maine attorney did make a lengthy argument at sentencing regarding the Connecticut concurrent sentence and the related issue of the firearm enhancement in Brown's sentencing. (See Sentencing Tr. at 16-21.) But I do not take Brown to be challenging this performance; rather his argument is that counsel should have moved to have the two cases consolidated in one of the two districts so that the sentences would have been handed down in the same case. However, gauging from this Court's discussion with counsel on the issue of how the concurrent sentence from Connecticut might impact his Maine sentence, I do not see that there would have been any predictable advantage to pursuing such a strategy. This Court specifically ordered that its 188-month sentence was to be served concurrently with the Connecticut sentence. (Doc. No. 291, J. and Commitment at 2.)

The First Circuit has already determined that this Court's sentence – which obviously included the two-point weapons-conduct enhancement – was a valid exercise of this Court's discretion under Booker. What is more, this Court was fully apprised of the concern about the interplay between the Connecticut federal conviction and the Maine federal firearm enhancement when it imposed its sentence.[1] In terms of performance and prejudice of counsel, Judge Singal

---

[1]  The United States summarizes:
> By sentencing memorandum dated June 13, 2003, [Defense Counsel] Geary pointed out that Brown had recently been sentenced on the Connecticut firearm charge (Docket #283). Having had "no reason to object to the assignment of the single [CHC] point for the guilty plea to the Connecticut firearm charge under [USSG §] 4A1.2(a)(4)," Brown "now withdraws his objection to the [USSG §]2D1.1(b)(1) enhancement" (Docket #283). However, Geary argued that the Connecticut firearm case was "part of the instant offense," had produced an adjustment under USSG §2D1.1(b)(1) and thus should not be the subject of CHC points (Docket #283). At Adjusted Offense Level 35 and CHC II, Brown's range should be 188 to 235 months in prison (Docket #283). In addition, because the Connecticut conviction was relevant conduct to the Maine offense, pursuant to USSG §5G1.3(b), the Court should:
>> adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment. (Docket #283).

who presided over the Maine proceeding, is in the best position to measure counsel's performance and the prejudice factor under <u>Strickland</u> apropos the potential impact a "consolidation" of the two cross-district/cross-circuit cases could have had on Brown's ultimate sentence, or for that matter, whether an attempt by counsel to consolidate the charges would have met receptive ears. See <u>United States v. McGill</u>, 11 F.3d 223, 225 (1st Cir. 1993).[2]

---

> Geary also sought a variant sentence on the grounds that the "rigid formulation" of his Guideline sentence resulted in "geometric" increases in punishment that were "far greater than necessary" to satisfy 18 U.S.C. §3553(a) (Docket #284).

(Gov't Answer at 15-16, Doc. No. 540.)

[2] Brown did not appeal the determination in Connecticut judging by the PACER database. It is clear from that docket that the fact that there were overlapping charges and overlapping defendants in the District of Maine was very much on the two courts' mind. However, because no appeal was taken from the Connecticut judgment there are no transcripts to corroborate Brown's assertion about what was said by the judge in that matter.

> In the sentencing memorandum in that case defense counsel handling that proceeding noted, the Court should not entertain the suggestion at PSR paragraph 46 that the cross-referencing rules of U.S.S.G. § 2X1.1(a) apply. Mr. Brown has entered a plea in the District of Maine and is awaiting sentencing there. Despite counsel's efforts to delay this sentencing until after the Maine sentencing, both the Government and the Court are desirous of having Mr. Brown sentenced prior to his sentencing in Maine.

<u>United States v. Brown</u>, 3:07CR143 (PCD)**,** Sentencing Mem. at 1 n.1, Doc. No. 118( D. Ct.) Brown's attorney for that case explained:

> Defendant's plea in the District of Maine was to Count One of the Indictment charging Mr. Brown with Conspiracy To Distribute and Possess With Intent To Distribute 50 Grams Or More Of Crack Cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2. According to his attorney in Maine, the Defendant's Federal Sentencing Guidelines range is 235-293 months imprisonment, subject to a 120-month mandatory minimum. The plea agreement in Maine states, *inter alia*, that Mr. Brown reserves the right to request that his Maine sentence run concurrent to the sentence in this case. No express agreement exists as to this issue by the United States Attorney's Office in Maine.

(<u>Id.</u> at 2.)

Connecticut counsel further argued:

> A note on the potential application of the cross-referencing rules of U.S.S.G. § 2X1.1(a): as previously stated, there is no need for this Court to entertain utilizing this section of the Guidelines to Mr. Brown. Mr. Brown has admitted criminal conduct in the Maine indictment, entered into a plea agreement in that case and awaits sentencing. The undersigned supports Deputy United States Attorney John Durham's PSR comment that the application of this rule could be viewed as "overreaching."

(<u>Id.</u> at 8.)

As requested by counsel in that proceeding (<u>see id.</u> at 3), Brown was sentenced to the lowest possible term of 41 months.

*2. Brown objects to counsel's failure to press an objection to the enhancement for Brown's managerial role and the drug weight resulting in a longer sentence*

With regards to his second 28 U.S.C. § 2255 ground, Brown faults counsel for not objecting to an enhancement for Brown's managerial role and the drug weight attribution at sentencing. He describes his sentence as "longer than necessary."

The Revised PSR set forth the following apropos the managerial role:

> 14. **Adjustments for Role in the Offense:** The defendant had a managerial role over, at least, Samantha Lamadeleine. This is evident in the fact that, at the early stage of the conspiracy, she transported drugs that were later sold by Kelly Solak, but the profits went to the defendant. Oftentimes, Lamadeleine transported the drugs by way of "body-packing" at the defendant's instruction. He would also accompany her, but would not actually maintain any drugs on his person. The offense involved more than five people, so the Probation Office considered a three-point enhancement; however, since it appears that Brown only held a managerial role over one person, i.e.- Samantha Lamadeleine, it only applied a two-point enhancement, pursuant to USSG §3B1.1(c).

(PSR ¶ 14.)[3]

With respect to drug weight/quantity defense counsel articulated the following argument as summarized by the PSR preparer:

> **Paragraphs 2, 3, 4, and 11; drug quantity**: The defendant objects to the Probation Office's representation of the defendant's association to Calvin Sebastian; specifically its assertion that Brown was a part of Sebastian's "network" of drug dealers on a continuing basis. He claims that he was not aware of when Sebastian first began sending co-conspirators to Maine with drugs. Brown affirms that he was first approached by Sebastian in mid-February 2006, at which time Sebastian offered Brown $300 to drive co-conspirators to Maine. He claims that Sebastian did not inform him of the details of these trips to Maine and Brown did not ask, although he does admit to knowing that Sebastian was a drug dealer and he was aware that there was a criminal purpose for the trip. According to Brown, he traveled back to Maine one other time at Sebastian's instruction in order to retrieve money from the same co-conspirators who he had previously transported to Maine. Essentially, the defendant claims the scope of his agreement in this conspiracy encompasses only three instances; (1) when he transported three individuals whom, combined, possessed 1.5 ounces of crack cocaine and 1.5

---

[3] The PSR preparer noted on this score: "After receiving objections from both parties the report was amended in the following ways: The role enhancement in paragraph 14 was reduced from three points to two points for reasons specified in that paragraph, which ultimately reduced the total offense level by one point[.]" (PSR at 18.)

7

ounces of powder cocaine destined for distribution in the Biddeford area; (2) when he traveled back to Maine to pick up drug proceeds from the same three individuals; and (3) when he approached Sebastian in March 2006 and arranged for Sebastian to front him one ounce of crack cocaine and one ounce of powder cocaine so that he could sell drugs on his own. He, therefore, believes that he should only be held accountable for a total of 2.5 ounces of crack cocaine and 2.5 ounces of powder cocaine.

> During his presentence interview, the defendant admitted to being jointly involved in the activity of Samantha Lamadeleine as it relates to this case. Her involvement is known to include the transportation and distribution of drugs encompassing the six-week time period to which Brown denies having any association. Thus, a contradiction occurs. Assuming that the defendant did not provide materially false information to the Probation Office during the interview, th[e]n it concludes that the jointly undertaken activity between Brown and Lamadeleine automatically connects Brown to the entire conspiracy. Additionally, as noted throughout the presentence report, the defendant had direct association with several other co-conspirators in this case during the period of time that drugs were being distributed from the High Street apartments. These coconspirators include the following individuals: Curtis Moore (paragraphs 4 and 4B); Philip Buckner (paragraph 4); and Maritza Lugo (paragraph 4B). The Probation Office simply does not believe the defendant's denial that he was knowingly and voluntarily in the midst of this significant drug distribution ring involving several individuals. It believes that Brown agreed to participate in transporting individuals, drugs, and money between Maine and Connecticut knowing exactly who was involved and what everyone's roles were. It, therefore, refutes the defendant's position that he should only be held accountable for the drugs that he specifies. Based on the rules of relevant conduct, the defendant should be held accountable for the drugs transported and ultimately distributed by the co-defendants and co-conspirators in this case, because his conduct was (a) jointly undertaken activity and (b) within the scope of the defendant's agreement and understanding of the conspiracy.

(PSR at 17-18.)

During this court's sentencing – in the context of a successful argument to reduce Brown's criminal history category from III to II – Brown's attorney withdrew his other objections while preserving a request for a variant sentence. (Sentencing Tr. at 3- 4.)

With regards to drug quantity, Brown notes that the PSR held him accountable for a total of 977.55 grams of crack cocaine and one gram of powder cocaine that he and his co-conspirators transported and distributed during the six-week period, resulting in a guideline

8

range of 210 to 262 months. (Reply Mem. at 5.) Brown feels like he should have only been held accountable for 2.5 ounces of crack cocaine and 2.5 ounces of powder cocaine. (Id. at 5-6.) He complains: "The district court made no independent findings regarding quantity, and every time quantity was discussed, it was attributed to the conspiracy." (Id. at 6.)

There is not much to say about this assertion of ineffective assistance of counsel beyond that Brown is rehashing his argument that his sentence was impermissible under Booker and his counsel was somehow accountable for that supposed sentencing flaw, despite his advocacy concerning the managerial role and drug quantity of which this court is well aware.[4] I acknowledge Brown's argument that the United States in working out such plea agreements does have the ability to proceed to the sentencing phase pressing a certain drug amount and a role in the offense enhancement requiring only a preponderance of the evidence standard and that the defendant who so pled is constrained in challenging these factors at sentencing due to the acceptance of responsibility factor. (See Reply Mem. at 6-7.) However, to date, there is no indication that there is anything constitutionally infirm about this common scenario. Brown did in fact secure the United States' recommendation for acceptance of responsibility after he withdrew the objections to the firearm enhancement and the managerial role. (Sentencing Tr. at 4-5.) While Brown maintains that the enhancement for drug weight is not a sentencing factor but an element of the offense (Reply Mem. at 7-8) his conspiracy to distribute sentence was securely footed in the offense to which he pled guilty under the Apprendi v. New Jersey, 530 U.S. 466

---

[4]  In his reply memorandum in this 28 U.S.C. § 2255 proceeding Brown adds a whole new twist to this ground, trying to argue that his plea was invalid because the Court did not ask him during the change of plea hearing anything about whether he was a "manager" of co-conspirator Lamadeleine. (Reply Mem. at 4-5.) "How can one possibly find that a guilty plea resulting in a 188 month sentence is knowing and intelligent," Brown queries now, "if there has been no explanation to petitioner and demonstrated … understanding by the petitioner that [a] 188 months sentence will necessarily be imposed if certain factors exist and an explanation of these factors." (Id. at 5.) This was not part of Brown's 28 U.S.C. § 2255 petition and the United States has not had an opportunity to respond to the validity of plea concern. It is not necessary to delve into this new Ground Two tangent beyond noting that the change of plea transcript is evidence that that proceeding is not open to attack on the grounds that Brown now alleges. The following discussion of Brown's third 28 U.S.C. § 2255 ground further supports this conclusion.

9

(2000), <u>Blakely v. Washington</u>, 542 U.S. 296, 303 (2004), and <u>United States v. Booker</u>, 543 U.S. 220 (2005) sentencing paradigm.

**3.** ***Brown maintains that when signing the plea agreement he was not advised that he would likely face a sentence in the 188 to 235 month range rather than the plea agreement's 97 to 121 month range***

In his third 28 U.S.C. § 2255 ground, Brown maintains that when he signed his plea agreement he was not advised that his sentencing range would be 188 to 235 months rather than the 97 to 121 months he perceives as being stipulated to in the plea agreement. He insists that there should have been no "hidden caveats" once the plea agreement was executed particularly in circumstances in which he faced an increased sentence of almost one-hundred-percent.

Brown's plea agreement reiterated the applicable penalty of a minimum of ten years in prison and a maximum of life. (Plea Agreement, Doc. No. 193.) In exchange for Brown's plea of guilty to Count I of the indictment, the parties agreed to the following: to recommend a three-level reduction for acceptance of responsibility; that Brown was ineligible for "safety valve" relief from the statutory minimum; and that Brown should be sentenced to 120 months in prison "or to the low-end of the otherwise applicable Guideline range." (<u>Id.</u>) Brown reserved the right to ask that his sentence in Maine run concurrently with whatever sentence he might receive in the District of Connecticut upon his conviction as a felon-in possession of a firearm. (<u>Id.</u>) The United States reserved the right to decide what position it would take on the issue of concurrent service of the two sentences. (<u>Id.</u>) The parties declared their understanding that if the Court rejected their recommendations Brown would not be permitted to withdraw his guilty plea. (<u>Id.</u>) Although Brown waived his right to appeal a sentence that did not exceed 120 months, the agreement specified: "The number of months mentioned in this paragraph does not necessarily constitute a reasonable estimate of the sentence that the parties expect will be imposed." (<u>Id.</u>)

No estimate of the United States Guideline range was included in the plea agreement. (Id.) The agreement provided that no other promises would be binding unless they were reduced to writing and signed by all parties. (Id.) Brown signed the agreement on February 19, 2008, under the representation that he had reviewed it carefully, understood it, and voluntarily agreed to its terms. (Id.) Attorney Geary signed under the representation that he had explained the agreement to Brown and, to his knowledge, Brown's decision to enter into it was informed and voluntary. (Id.)

Asked by the Court at the change of plea hearing, the prosecutor said that nothing in the plea agreement bound the court. (Feb. 19, 2008, Rule 11 Tr. at 14, Doc. No. 362.) When the Court explained this condition to Brown, he said he understood. (Id. at 15.) The Court also indicated that it could not determine the advisory Guideline sentence until it reviewed the PSR and, again, Brown said he understood. (Id. at 19.) This court accepted the plea as voluntary and knowing. (Id. at 18-21.)

So, contrary to Brown's assertion, there was no stipulation in the plea agreement of a 97 to 121 month sentencing range. Although he did so with respect to his Ground One claim (Doc. No. 543 at 9, Page ID No. 2074), Brown does not provide a sworn statement. Any affidavit with respect to this ground would necessarily aver that his attorney advised him that this would be his ultimate sentencing range. The record evidence is, rather, that he was expressly made aware that his sentence could be as high as life and that the court would be the final arbiter after the preparation of the PSR. His argument is only that the prosecution and his defense attorney knew at the time of the plea that "in all likelihood" he would face a steeper sentencing range. (Reply Mem. at 7.)[5] It is the rare exception rather than the general rule that at the time of a plea the

---

[5] In his reply memorandum Brown does little more to develop his reasoning behind this ground, instead he lapses into arguments concerning his other grounds.

parties and court can make any safe assumption of the specifics of sentencing exposure in a federal drug conspiracy case and Brown's effort to attack his sentence on this ground does not provide a basis for 28 U.S.C. § 2255 relief through the Strickland prism.

**C.     Alford-plea State Conviction Should Not Have been counted as a Violent Felony**
*(Doc. No. 530)*

As for Brown's fourth 28 U.S.C. § 2255 challenge -- set forth in his supplemental pleading -- he asserts that one of his state court convictions was pursuant to an Alford plea, see North Carolina v. Alford, 400 U.S. 25 (1970), and, thus, should not have counted as a violent felony. Brown does not address this claim in his reply memorandum.

Brown relies on a recent Fourth Circuit case, United States v. Alston, which concluded, as a matter of first impression:

> Because Alston's Alford plea to second-degree assault did not necessarily rest on facts establishing his participation in a type of assault that qualifies as a violent felony, see Shepard v. United States, 544 U.S. 13, 20-21, 24 (2005), in that (1) he admitted to no such facts and (2) such facts are not inherent in a Maryland conviction for second-degree assault, we cannot conclude that Alston's conviction for second-degree assault qualifies as a predicate conviction under ACCA. Accordingly, we vacate Alston's sentence and remand for resentencing.

611 F.3d 219, 221 (4th Cir. 2010); see also United States v. Vinton, 631 F.3d 476, 486 -487 (8th Cir. 2011). It is not clear that the First Circuit would arrive at a similar conclusion apropos Alford guilty plea convictions in the context of federal sentences.

Brown identifies a 2002 conviction in Connecticut as the assault offense that was used to his detriment during sentencing. The District of Maine Revised PSR includes one such conviction with the following description:

> According to a police report, the defendant was a passenger in a vehicle which was driven by a female, whose boyfriend was also a passenger in the vehicle. According to the female driver, the defendant and her boyfriend were in possession of firearms and were shooting out of the windows of the car toward a group of males. Two of these males were shot, one fatally. Connecticut

12

> Department of Corrections records confirm that the other male passenger in the vehicle was convicted of Manslaughter in the 1st Degree. The defendant stated that he retained legal counsel to represent him in this matter. He was discharged to community release on February 25, 2003, and transferred to supervised parole on July 7, 2003. He was returned from parole on September 22, 2003, and released back to parole supervision on December 4, 2003. The defendant completed his parole term on June 3, 2004.

(PSR ¶ 23.)[6] Brown received three criminal history points for this conviction. (PSR ¶ 23.)

There is no evidence before this court that substantiates Brown's contention that this conviction falls within the ambit of the Alston rationale. Brown states in his second supplemental pleading that on May 24, 2002, he was sentenced to fifteen years without admitting his guilt and that he did not believe that this conviction could be used against him in further proceedings. (2d Suppl. at 2, Doc. No. 530.) The only signature on this document by Brown is his signature related to the certificate of service. I entered a docket order on February 7, 2011, asking Brown to clarify whether the supplementation submitted at Docket No. 530 was his entire supplementation. (Doc. No. 531.) On February 11, 2011, Brown signed a document that indicated to the court that his previous supplementation on this score was all that he was relying on in support of this ground. (Feb. 11, 2011, Notification at 1, Doc. No. 535.) The United States has not addressed this claim in its responsive memorandum, perhaps assuming that Brown had provided the court with an insufficient basis to inquire into this aspect of Brown's sentence, especially because this is the type of claim that needs to be pursued through a direct appeal, see, e.g., Bousley v. United States, 523 U.S. 614 (1998); United States v. Frady, 456 U.S. 152, 166-68 (1982); Stone v. Powell, 428 U.S. 465 (1976), and Brown did not attempt to challenge this sentencing issue during either his sentencing or his direct appeal.[7]

---

[6] The PSR preparer noted that the details in this paragraph of Brown's Maine PSR were garnered though the Connecticut PSR work.

[7] The Fourth Circuit's Alston was decided on July 2, 2010, well after Brown's sentence. However, to date Alston is not a game changer vis-a-vis the First Circuit's federal sentencing jurisprudence as it relates to prior

13

**D. Brown's Request for Reduction under the Fair Sentencing Act**

In his first supplemental pleading (Doc. No. 515) and his reply memorandum (Reply Mem. at 10-17) Brown asks the court to consider reducing his sentence pursuant to the Fair Sentencing Act (FSA). Brown cites to Judge Hornby's United States v. Douglas, 746 F.Supp.2d 220 (D. Me. 2010). Judge Hornby, addressing this act in the context of a challenge brought by a defendant that was facing sentencing in October 2010, indicated in that decision:

> [T]he new law contains significant ameliorating provisions, modest penalty increases and some urgency. It has already caused the Commission to issue amended, emergency guidelines, including amendments that reduce the base offense levels for various quantities of crack cocaine, all effective November 1, 2010. The quantity amendments are based explicitly upon the Fair Sentencing Act's new mandatory minimum sentences. They will apply to all offenders sentenced after November 1, 2010, even if those offenders committed their offenses before August 3, 2010.

Id. at 223 (footnotes omitted). Later on, the Court reasoned:

> Congress stated that its goal was to "restore fairness to Federal cocaine sentencing." Understandably, Congress might not have wanted a large volume of previously sentenced offenders to be released from prison immediately. But what possible reason could there be to want judges to *continue* to impose new sentences that are not "fair" over the next five years while the statute of limitations runs?

Id. at 229 (footnote omitted) (emphasis added).

However, on the same day he issued Douglas, Judge Hornby entered the following order on a motion to amend a sentence filed by a defendant in a parallel post-sentencing position to Brown's and concluded that there was no recourse for a defendant who, like Brown, was previously sentenced, United States v. Butterworth, Criminal No. 06–62–P–H, 2010 WL 4362859, 1 (D. Me. Oct. 27, 2010), and, shortly thereafter Chief Judge Woodcock followed a similar course, United States v. Rosario, 752 F.Supp.2d 82 (D. Me. 2010). See also United

---

convictions. If Brown had a basis to challenge the use of this conviction based on an Alford plea theory he should have raised this at his sentencing and on direct appeal. The fact that Alston was issued after these proceedings does not alter that equation.

States v. Watts, __ F. Supp. 2d. __, 2011 WL 1282542 (D. Mass. Apr. 5, 2011). I can find no basis to recommend that this Court not follow this clear intra-district precedent and rebuff Brown's attempt to seek resentencing under the Fair Sentencing Act.

## Conclusion

For the reasons stated above, I recommend that the Court deny Brown 28 U.S.C. § 2255 relief. I further recommend that a certificate of appealability should not issue in the event Brown files a notice of appeal because there is no substantial showing of the denial of a constitutional right as contemplated by 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

May 9, 2011.